# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

CORTEZ L TRAPPS, Inmate #13392-026 )
)
)
       Petitioner, )
) CIVIL NO. 10-887-DRH
vs. )
)
JAMES CROSS, )
)
       Respondent.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Before the Court are three pending motions filed by petitioner Cortez Trapps, an inmate in the Greenville federal correctional institution, against respondent James Cross, warden of the Greenville federal correctional institution. Those motions are as follows: 1) Trapps' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1); 2) Trapps' motion for temporary restraining order ("TRO") (Doc. 23); and Trapps' motion for summary judgment (Doc. 24). For the reasons that follow, all three motions are denied.

## I. Background

Trapps is serving fifteen years in federal prison for possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). He petitioned for a writ of habeas corpus under 28 U.S.C. § 2241, challenging a disciplinary conviction for possessing a weapon that resulted in the

loss of forty-one days' good-time credit, thirty days' of disciplinary segregation, 90 days' loss of commissary privileges, 90 days' loss of telephone privileges, and 90 days' loss of visiting privileges.

On January 6, 2010, while searching Trapps' cell, a prison staff member found a "homemade weapon . . . 5.5 inches long, sharpened to a point with a string taped around the other end." The staff member filled out an incident report, gave a copy to Trapps that same day, and sent a copy to the lieutenant's office along with the weapon. On February 17, 2010, the Unit Discipline Committee conducted a hearing whereby it was noted that Trapps had requested a staff representative, but at the hearing elected to waive his appearance. At the hearing, Trapps denied the charges against him, stating, "I can't understand why I'm being charged with something I didn't have knowledge of." He did not call any witnesses, nor were any witnesses called.

On April 19, 2010, the discipline hearing officer ("DHO") found the act committed as charged. The DHO gave the following reasoning for his finding:

> "This finding is based on the reporting staff member's written statement that on January 6, 2010, at approximately 7:15 a.m., while searching cell C02-110, in a hole in the upper locker, I found a homemade weapon. It was approximately 5.5 inches long, sharpened to a point with a string taped around the other end.
>
> The investigative lieutenant stated that the locker was an extra locker which was not secured because only two inmates are assigned to that cell, and neither inmate claimed ownership of the weapon. Inmates are responsible for the contents of their cells, and area expected to keep it clear of any contraband.
>
> You stated to the DHO, 'I can't understand why I'm being charged

> with something I didn't have knowledge of.'
>
> Based on the greater weight of the evidence, the DHO finds you did commit the prohibited act of Code #104, Possession of a Weapon."

The DHO's decision was delivered to Trapps on August 9, 2010.

On August 11, 2010, Trapps filed an administrative appeal, contending that during his stay in administrative segregation, another inmate, Bruce McCree, had informed him that he had placed the weapon in Trapps' cell because his cell was being inspected. Trapps alleged that he informed the lieutenant of this prior to his hearing. Attached to the appeal was an affidavit from McCree, dated August 10, 2010, that stated the following:

> "[O]n December 22, [2]009[,] . . . the unit officer attempted to pat search me on my return from the rec yard. I refused this pat search and proceeded to cell 210 in the 3A housing unit, I at that time removed a hook that altered into what could be called a knife for personal protection and placed it in a open locker in cell 1010 located in housing unit 3A."

He then stated that on December 24, 2009, that he was "escorted to SHU"[1] and "didn't have a chance to retrieve the weapon that [he] had placed in cell 110 of unit 3A which housed Mr. Cortez Trapps and Mr. Willie Hemphill." Trapps' appeal was denied and again denied following another administrative appeal.

After exhausting his administrative remedies, Trapps filed his petition for

---

[1] "Special Housing Units (SHUs) are housing units in Bureau institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates. Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public, by providing alternative housing assignments for inmates removed from the general population." 28 C.F.R. § 541.21.

writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), seeking revocation of good time credit and expungement of the incident report charging him with possession of a weapon. The Court ordered respondent to answer, and on July 15, 2011, respondent filed a response (Doc. 20) to Trapps' petition for writ of habeas corpus. On August 11, 2011, Trapps filed a reply to respondent's response (Doc. 22), a motion for TRO (Doc. 23), and a motion for summary judgment (Doc. 24). On August 12, 2011, respondent filed responses to both the motion for summary judgment (Doc. 25) and the motion for TRO (Doc. 26) respectively. For these reasons that follow, Trapps' § 2241 motion (Doc. 1), motion for TRO (Doc. 23), and motion for summary judgment (Doc. 24) are denied.

## II. Analysis

*A. Trapps' Motion for TRO*

Before addressing Trapps' petition for habeas corpus (Doc. 1) and motion for summary judgment (Doc. 24), the Court takes up Trapps' motion for TRO (Doc. 23). In that motion (Doc. 23), Trapps seeks to restrain respondent from holding Trapps in administrative detention pending the outcome of his petition and to either have him transferred back to the the general population or to a different prison. Trapps contends that he has been held in administrative detention since March 6, 2011, and infers that prison officials are retaliating against him for filing his petition for habeas corpus. Respondent counters that Trapps was placed in administrative detention for his own safety after he was

attacked by gang members and that placing him back in the general population would potentially put him in danger. Respondent further notes that Trapps has been designated for assignment to a different institution since March 6, 2011, but his transfer has not been completed due to his pending litigation in this district, and that transferring Trapps outside of this jurisdiction would divest the Court of jurisdiction over Trapps. The Court finds respondent's rational persuasive.

"Administrative detention status is an administrative status which moves [an inmate] from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public." 28 C.F.R. § 541.22. "Administrative detention status is non-punitive, and can occur for a variety of reasons." *Id.*

Section 541.23 of the Code of Federal Regulations explicitly provides that an inmate may be placed in administrative detention status when an inmate's "presence poses a threat to life, property, self, staff, other inmates, the public, or the security or orderly running of the institution and: . . . staff determined that you need, administrative detention status for your own protection." 28 C.F.R. § 541.23(c). Moreover, § 541.27 provides that an inmate "may be placed in administrative detention status as a protection case" when "[b]ased on evidence, staff believe [an inmate's] safety may be seriously jeopardized by placement in the general population." 28 U.S.C. § 541.27. Furthermore, "'the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison

sentence.'" *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

Here, Trapps' was placed in administrative detention status for his own safety and is being held there for his safety until his petition for habeas corpus is ruled upon. Placing respondent in administrative detention status for his own safety was certainly within the respondent's authority, 28 C.F.R. §§ 541.23(c), 541.27, *Zimmerman*, 226 F.3d at 572, and in any event, Trapps has failed to exhaust his administrative remedies or provide any reason why he should not have to do so. See *Moore v. Olson*, 368 F.3d 757, 758 (7th Cir. 2004); *Greene v. Meese*, 875 F.2d 639, 640-41 (7th Cir. 1989); *Sanchez v. Miller*, 792 F.2d 694, 697-99 (7th Cir. 1986); 28 U.S.C. § 541.28(b) ("[I]f you feel at any time your placement in the SHU as a protection case is unnecessary, you may request a hearing under this section."). Furthermore, Trapps' complaint now appears moot as this Court has chosen to rule on Trapps' § 2241 petition and there will be nothing prohibiting Trapps transfer to another institution since respondent indicated he was only being held there until the Court ruled on his § 2241 petition. See 28 C.F.R. § 541.33(a) ("You will be released from administrative detention status when the reasons for your placement no longer exist."). Thus, Trapps motion for TRO (Doc. 23) is denied.

*B. Trapps' Habeas Corpus Petition and Motion for Summary Judgment*

"Section 2241 provides a vehicle for attacking 'the execution, not the validity, of the sentence.'" *Atehortua v. Kindt*, 951 F.2d 126, 129 (7th Cir. 1991)

(quoting *United States v. Ford*, 627 F.2d 807, 813 (7th Cir. 1980)).  Habeas corpus is available to challenge the duration as well as the fact of custody, and may be a proper remedy for the denial of good-time credits.  *Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994); *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).

"Where a loss of good time credits is possible, the Supreme Court has held that the inmate must receive: '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" *McPherson v. McBride*, 188 F.3d 784, 785-86 (7th Cir. 1999) (quoting *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985)).  Further, "procedural due process requires that the decision of the prison disciplinary board must be supported by 'some evidence.'" *McPherson*, 188 F.3d at 786 (quoting *Hill*, 472 U.S. at 454).  Here, Trapps does argue that the hearing lacked the procedural protections afforded an inmate, but rather asserts only that the decision is unsupported by "some evidence."  The Court disagrees.

"The 'some evidence' standard is less exacting than the preponderance of the evidence standard, requiring only that the decision not be arbitrary or without support in the record." *McPherson*, 188 F.3d at 786.  "In reviewing a decision for 'some evidence,' courts 'are not required to conduct an examination of the entire record, independently assess credibility, or weigh the evidence, but only

determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *Id.*

Here, the DHO relied on the reporting staff member's written statement in his incident report and the investigative lieutenant's statement. In the report, the reporting staff member wrote the following:

> "On the above date at the stated time, I conducted a search of Cell #C01-110 in H3-A. In a hole in the upper locker, I found a homemade weapon. It was approximately 5.5 inches long, sharpened to a point with a string taped around the other end. Inmate Trapps(#13392-026) was assigned to the cell. I sent the weapon along with this report to the Liuetenant's [sic] Office."

Further, according to the DHO's decision, the investigating lieutenant stated "that the locker was an extra locker which was not secured because only two inmates are assigned to that cell, and neither inmate claimed ownership of the weapon. Inmates are responsible for the contents of their cells, and area expected to keep it clear of any contraband." Both the staff member's report and the investigating lieutenant's statement provides "some evidence" for the DHO's decision. Because the "some evidence" is met, there is no basis for granting habeas relief unless Trapps can somehow invalidate the staff member's report or the lieutenant's statement. See *McPherson*, 188 F.3d at 786.

Trapps only basis for invalidating the DHO decision is his reliance on the affidavit he attached to his appeal. This affidavit was not before the DHO, however, and Trapps has failed to explain why that evidence was not presented at that hearing, particularly when he alleges that he knew about McCree's statement

prior to the hearing and had informed other prison officials about this statement. Trapps requested a staff representative to assist him at the hearing but then waived that right and failed to present any evidence at the hearing. Trapps cannot now demand a new hearing or use this evidence to invalidate the evidence to support the DHO's finding when it was available to him prior to the hearing. See *McPherson*, 188 F.3d at 786 ("McPherson cannot now demand a new hearing based upon evidence that was available to him at that prior hearing."). Thus, the Court denies Trapps' habeas petition and denies his motion for summary judgment as moot (Doc. 24).

### III. Conclusion

For the reasons stated above, the Court denies Trapps' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), motion for TRO (Doc. 23), and motion for summary judgment (Doc. 24). The case is dismissed with prejudice; the Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 29th day of September, 2011.

Digitally signed by David R. Herndon
Date: 2011.09.29 15:28:44 -05'00'

**Chief Judge**
**United States District Court**